Harrison Pierce Kordestani, Bar No. 175220
hpk@kordestanilaw.com
KORDESTANI LEGAL PARTNERS, INC.
2699 ½ North Beachwood Drive, STE 157
Los Angeles, California 90068
Telephone: (323) 603-7656

*Attorney for Plaintiffs Knights Resources LLC, Dustin Briggs, and Jorge Ignacio Dodero*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KNIGHTS RESOURCES LLC, a Florida limited liability company; DUSTIN BRIGGS, an individual; and JORGE IGNACIO DODERO, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL CUILLARD, an individual; KRISHNA CUILLARD an individual; and Does 1 through 10, inclusive;<br><br>Defendants. | Case No.: **'25CV2009 H    MMP**<br><br>**VERIFIED COMPLAINT FOR DAMAGES:**<br><br>**1. Breach of Contract;**<br>**2. Breach of the Implied Covenant of Good Faith and Fair Dealing;**<br>**3. Conversion;**<br>**4. Promissory Fraud;**<br>**5. Declaratory Judgment of Rights and Obligations;**<br>**6. Unjust Enrichment;**<br>**7. Fraud in the Inducement;**<br>**8. Breach of Fiduciary Duty;**<br>**9. Accounting; and**<br>**10. Civil Conspiracy** |

COMES NOW the Plaintiff, by and through its undersigned attorney, and, for its Complaint against the Defendants, alleges as follows:

Plaintiffs DUSTIN BRIGGS, JORGE IGNACIO DODERO, and KNIGHTS RESOURCES LLC (collectively, "Plaintiffs") hereby complain and allege against Defendants MICHAEL CUILLARD, KRISHNA CUILLARD, and DOES 1 through 10, inclusive (collectively, "Defendants"), as follows:

1

COMPLAINT FOR DAMAGES

## INTRODUCTION

1. This action arises from a fraudulent scheme perpetrated by Defendants MICHAEL CUILLARD and KRISHNA CUILLARD (collectively, "Defendants") against Plaintiffs. Through a series of material misrepresentations regarding their business experience, assets, capabilities, and intentions, Defendants induced Plaintiffs to invest substantial sums of money into purported cryptocurrency ventures. After obtaining Plaintiffs' investment, Defendants failed to develop the promised cryptocurrency trading platform, failed to generate any returns, refused to provide information about the use of funds, and ultimately acknowledged that they had misappropriated Plaintiffs' funds for their personal use.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states, specifically: Plaintiff BRIGGS is a citizen of Nevada, Plaintiff DODERO is a citizen of the Argentine Republic and a frequent personal and business traveler to Nevada and California, Plaintiff KNIGHTS is a Florida LLC, and Defendants are residents of California. This Court has personal jurisdiction over Defendants because they reside in and/or conduct substantial business within the State of California, and the acts giving rise to the claims occurred within this jurisdiction.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants reside in this district.

## PARTIES

4. Plaintiff DUSTIN BRIGGS ("Briggs") is an individual residing in the State of Nevada.

COMPLAINT FOR DAMAGES

5. Plaintiff JORGE IGNACIO DODERO ("Dodero") is an individual residing in the City of Buenos Aires, Republic of Argentina.

6. Plaintiff KNIGHTS RESOURCES LLC ("Knights") is a limited liability company organized and existing under the laws of the state of Florida.

7. Defendant MICHAEL CUILLARD is an individual residing in San Diego, California.

8. Defendant KRISHNA CUILLARD is an individual residing in San Diego, California, and is the spouse of Defendant MICHAEL CUILLARD.

9. Plaintiffs are ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by those defendants.

## FACTUAL ALLEGATIONS

### Initial Contact and Misrepresentations

10. On or about February 1, 2024, Plaintiffs Briggs and Dodero met with Defendants Michael and Krishna Cuillard for the first time to discuss potential business opportunities in the cryptocurrency space.

11. During this initial meeting, Defendant Michael Cuillard made numerous representations to Plaintiffs about his purported successful cryptocurrency business ventures, including a cryptocurrency exchange and an ATM business, which were licensed as a Money Service Business with Fincen as per the licenses specified in paragraph 12. below.

12. Specifically, Defendant Michael Cuillard:

COMPLAINT FOR DAMAGES

a. Represented to Plaintiffs that Bitcoin ATMs Pros was a very well-established cryptocurrency ATM company in California that was transacting millions of dollars per month through a network of 40 ATM machines throughout California;

b. Represented to Plaintiffs that Bitcoin ATMs Pros had 5,000 ATM machines already paid for in China, awaiting deployment;

c. Represented to Plaintiffs that Bitcoin ATMs Pros had secured an agreement to install 400 ATM machines in the United Arab Emirates; and

d. Represented to Plaintiffs that CryptoGram was a very well-established cryptocurrency node in California that transacted millions of dollars per month.

e. Represented to Plaintiffs that Bitcoin ATM Pros was a duly licensed and registered money service business (MSB) with FINCEN under No. 31000265249660 as check casher (including travelers' and money orders), dealer in foreign exchange, issuer of money orders, money transmitter, other, provider of prepaid access, seller of money orders and seller of prepaid access. A copy of such license is attached hereby as Exhibit III.

f. Represented to Plaintiffs that Cryptogram was a duly licensed and registered money service business (MSB) with FINCEN under No. 31000242296627 and duly authorized to conduct digital currency exchange transactions in the United States. A copy of such license is attached hereby as Exhibit III.

g. Failed to provide Plaintiffs documentation and verifiable references regarding the ATM businesses and CryptoGram, which Defendants either refused to provide or answered with vague or unverifiable materials; Plaintiffs were told that delays were due to confidentiality agreements or third-party NDAs.

COMPLAINT FOR DAMAGES

13. These representations, and the FINCEN licenses included as Exhibit III, were material to Plaintiffs' decision to enter into business with Defendants and form the basis of their agreement to proceed with a joint venture partnership.

14. Plaintiffs have since discovered that these representations were false and misleading. Bitcoin ATMs Pros operated only one (1) single ATM in California, and not 40 as represented. Further, there is no evidence of 5,000 ATM machines purchased in China or any agreement to install 400 ATM machines in the United Arab Emirates. Additionally, CryptoGram does not even have a functional website, much less millions in monthly transactions as represented by Defendant Michael Cuillard.

**Subsequent Meetings and Formation of the Joint Venture**

15. Plaintiffs Briggs and Dodero met with Defendant Michael Cuillard again in March, October, November, and December 2024. Notably, Defendant Michael Cuillard disappeared and was unresponsive from March to September 2024, during which time Plaintiffs were unable to get updates on their investments or the status of the joint venture projects. Plaintiffs travelled in four different occasions to California to meet Defendant Michael Cuillard in San Diego.

16. Based on Defendant Michael Cuillard's representations and promises, Plaintiffs entered into a Joint Venture Agreement with Defendants (hereinafter, the "Original Agreement") to jointly develop various business opportunities in the cryptocurrency space. The Original Agreement was primarily in writing and memorialized through signed documents, supplemented by email and message-based communications reflecting the parties' mutual intent to form a joint venture. A copy of the Original Agreement is attached herein as Exhibit I.

17. The Original Agreement provided for the joint development of short-term and mid-term projects as listed in Exhibits I and II of the Agreement, respectively. The parties explicitly agreed to treat each other as partners and investors under the joint venture partnership.

18. As part of the Original Agreement, the parties agreed that Plaintiffs would have participation rights as investors and partners in the joint venture, including the right to be informed of and approve decisions regarding the joint venture's operations.

19. Plaintiffs did not invest as passive lenders or customers. The parties expressly agreed that Plaintiffs would be treated as equity-level partners in the joint venture, with shared decision-making rights and profit participation.

20. Plaintiffs reserve the right to amend this Complaint upon obtaining further information through discovery, including to name additional defendants, expand upon the nature of the joint venture, or assert claims for professional negligence or aiding and abetting, as appropriate.

**Automated Trading Software Investment**

21. In February 2024, Defendant Michael Cuillard proposed the development of a cryptocurrency automated trading software as part of the joint venture's projects.

22. Defendant Michael Cuillard represented to Plaintiffs that the automated trading software would cost $100,000 to develop and would be completed within approximately two months, by March 2024.

23. Defendant Michael Cuillard further represented that the automated trading software would implement 17 different cryptocurrency trading strategies and could potentially generate returns of 300-400% per month.

24. Based on these representations, Plaintiffs invested $100,000 for the development of the automated trading software, with the expectation of substantial returns on their investment.

25. Plaintiffs reasonably relied on these representations in part because Defendant Michael Cuillard provided materials and verbal assurances regarding prior successes, purported partnerships, and screenshots of alleged trading activity, which Plaintiffs later discovered to be fabricated or misleading.

6

26. Over one year has passed since this investment, and the automated trading software has not been developed and no trades have been executed using Plaintiffs' funds.

27. Without Plaintiffs' knowledge or consent, Defendant Michael Cuillard unilaterally decided to change the development company for the automated trading software three (3) times. Defendant Michael Cuillard did not consult with Plaintiffs regarding new budgets and did not seek their approval for these changes, despite their status as investors and partners in the joint venture.

**Amendment to Agreement and Additional Investment**

28. At some point after the formation of the Original Agreement, Defendant Michael Cuillard demanded that the Original Agreement be renegotiated under false pretenses, resulting in an amendment to the Original Agreement (hereinafter, the "Amendment").  A copy of the Amendment is attached herein as Exhibit II.

29. Defendant Michael Cuillard induced Plaintiffs to enter into the Amendment by falsely promising monthly returns of 100% to 200% through the use of a platform called Cryptohopper. At some point, Defendant Michael Cuillard presented Plaintiffs a proof of performance to evidence past returns in what was supposed to be Defendant Krishna Cuillard's account. At some point after this offering by Defendant Michael Cuillard, Defendant Krishna Cuillard confirmed to Plaintiffs on a Zoom call that the returns were between 50% to 200% per month.

30. Plaintiffs are informed and believe, and thereon allege, that the Original Agreement and Amendment were procured through fraud, misrepresentation, and concealment, rendering the agreements void or voidable.

31. Based on these representations, approximately 120 days ago, Plaintiffs wired an additional $115,000 to Defendants for trading purposes. Such funds were supposed to be traded.

7

COMPLAINT FOR DAMAGES

32. To date, no profits have been generated from this additional investment, and no successful trades have been executed despite Defendant Michael Cuillard's promises of substantial monthly returns.

### Defendants' Failure to Perform and Misappropriation of Funds

33. Throughout the course of the joint venture, Plaintiffs repeatedly requested information regarding the status of their investments, including invoices for expenses incurred in developing the automated trading software and meetings with the developers.

34. Defendant Michael Cuillard consistently ignored or refused these requests without any reasonable excuse, failing to provide the requested information or arrange the requested meetings.

35. Defendant Michael Cuillard had promised Plaintiffs complete control of their invested funds, but this control was never provided. Plaintiffs were never given visibility into how their funds were being used or the current status of those funds.

36. Plaintiffs are informed and believe, and thereon allege, that the funds they wired to Defendants were deposited into a bank account jointly held by Defendants Michael and Krishna Cuillard.

37. Defendant Michael Cuillard has acknowledged in writing that he is holding Plaintiffs' funds "hostage," demonstrating his wrongful exercise of dominion over Plaintiffs' property.

38. Plaintiffs are informed and believe, and thereon allege, that Defendants operated through one or more entities that were mere alter egos of the individual Defendants, and used said entities to further their fraudulent scheme, commingle assets, and avoid personal liability. Plaintiffs reserve the right to amend the Complaint to name such entities as Doe Defendants.

39. When Plaintiffs pressed Defendant Michael Cuillard for the return of their funds, he blocked communication with them on at least three separate occasions, as evidenced by screenshots of their communications.

COMPLAINT FOR DAMAGES

40. On or about February 2025, Defendant Michael Cuillard admitted to Plaintiffs that he had taken funds from the joint venture company for his personal use and that he had singularly changed the terms of the agreement.

41. Defendant Michael Cuillard further stated that he now considered Plaintiffs' investments as merely a "lesson" or "payment for knowledge in the crypto-space," effectively admitting that he had no intention of returning Plaintiffs' funds or using them for the agreed-upon purposes.

42. Plaintiffs relied on Defendants' specific promises, representations, and personal assurances regarding the safety, structure, and returns of the joint venture—none of which were disclosed to be speculative or uncertain. Moreover, Plaintiffs' funds were not intended for speculative trading; rather, they were allocated primarily for the development of a trading platform, a project that was represented to involve little or no risk to the invested capital itself.

43. Plaintiffs possess communication screenshots where Defendant Michael Cuillard admits to these actions on multiple occasions, providing clear evidence of Defendants' wrongful intent and conduct. These screenshots, which show Defendant Michael Cuillard admitting to misusing Plaintiffs' funds and referring to their investments as the price to be paid for a lesson," are attached as Exhibit IV and incorporated herein by reference.

### Recent Demands and Refusal to Return Funds

44. Over the past 60 days, Plaintiffs have made multiple demands and requests for payment and information regarding their investments to Defendants.

45. Despite these demands, Defendants have provided no evidence regarding how Plaintiffs' funds were used and have not returned any of the invested funds to Plaintiffs.

46. Plaintiffs are informed and believe, and thereon allege, that Defendants used Plaintiffs' funds for their personal benefit rather than for the purposes of the joint venture as agreed.

9

COMPLAINT FOR DAMAGES

47. Defendants' failure to develop the automated trading software, generate any returns, provide information about the use of funds, or return Plaintiffs' investments has caused Plaintiffs substantial financial harm.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Against All Defendants)**

48. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

49. Plaintiffs and Defendants entered into the Original Agreement and the Amendment (collectively, the "Agreements"), which were valid and enforceable contracts.

50. Plaintiffs performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the Agreements, including investing $100,000 for the development of the automated trading software and an additional $115,000 for trading purposes.

51. Defendants breached the Agreements by, among other things:

    a. Failing to develop the automated trading software as promised;

    b. Failing to generate the promised returns;

    c. Changing development companies without Plaintiffs' approval;

    d. Failing to provide Plaintiffs with information and control as agreed upon;

    e. Taking funds from the joint venture for personal use;

    f. Unilaterally changing the terms of the Agreements; and

    g. Refusing to return Plaintiffs' investments despite demands to do so.

52. As a direct and proximate result of Defendants' breaches, Plaintiffs have suffered damages in an amount to be proven at trial, but no less than $215,000, plus interest.

COMPLAINT FOR DAMAGES

**SECOND CAUSE OF ACTION**
**BREACH OF THE IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**
**(Against All Defendants)**

53. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

54. Implied in the Agreements between Plaintiffs and Defendants was a covenant of good faith and fair dealing, which obligated each party to do everything necessary to carry out the purposes of the Agreements and to refrain from doing anything that would destroy or injure the right of the other party to receive the benefits of the Agreements.

55. Defendants breached the implied covenant of good faith and fair dealing by, among other things:

    a. Making misrepresentations about their business experience and capabilities to induce Plaintiffs to enter into the Agreements;

    b. Failing to use Plaintiffs' funds for the agreed purposes;

    c. Intentionally preventing Plaintiffs from receiving the benefits of the Agreements;

    d. Taking funds from the joint venture for personal use;

    e. Unilaterally changing the terms of the Agreements; and

    f. Blocking communication to avoid accountability.

56. As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered damages in an amount to be proven at trial, but no less than $215,000, plus interest.

//

//

COMPLAINT FOR DAMAGES

### THIRD CAUSE OF ACTION
### CONVERSION
### (Against All Defendants)

57. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

58. Plaintiffs had ownership and right of possession of the funds they invested with Defendants, totaling at least $215,000. Defendants wrongfully exercised dominion over Plaintiffs' funds by, among other things:

    a. Using the funds for purposes other than those agreed upon;

    b. Taking funds from the joint venture for personal use;

    c. Refusing to return the funds despite Plaintiffs' demands; and

    d. Acknowledging in writing that Defendant Michael Cuillard was holding Plaintiffs' funds "hostage."

59. Defendants' wrongful exercise of dominion over Plaintiffs' funds was in derogation of Plaintiffs' rights.

60. As a direct and proximate result of Defendants' conversion, Plaintiffs have suffered damages in an amount to be proven at trial, but no less than $215,000, plus interest.

61. Defendants' conduct as alleged herein was willful, wanton, malicious, and oppressive, and justifies the awarding of exemplary and punitive damages.

### FOURTH CAUSE OF ACTION
### PROMISSORY FRAUD
### (Against All Defendants)

62. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

63. Defendants made numerous promises to Plaintiffs, including but not limited to:

12

a. That Bitcoin ATMs Pros was a well-established cryptocurrency ATM company with 40 ATMs in California;

b. That Bitcoin ATMs Pros had 5,000 ATM machines already paid for in China;

c. That Bitcoin ATMs Pros had an agreement to install 400 ATM machines in the United Arab Emirates;

d. That CryptoGram was a well-established cryptocurrency node in California;

e. That the automated trading software would cost $100,000 and would be developed within two months;

f. That the automated trading software would implement 17 different trading strategies and could potentially generate returns of 300-400% per month;

g. That the Cryptohopper platform would generate monthly returns of 100% to 200%; and

h. That Plaintiffs would have complete control of their invested funds.

64. These promises were material to Plaintiffs' decision to enter into the Agreements and invest money with Defendants.

65. Defendants knew that these promises were false when made, or made them recklessly and without regard for their truth.

66. Defendants intended that Plaintiffs rely on these promises to secure their investment.

67. Plaintiffs reasonably relied on Defendants' promises and, as a result, entered into the Agreements and invested at least $215,000 with Defendants.

68. As a direct and proximate result of Defendants' promissory fraud, Plaintiffs have suffered damages in an amount to be proven at trial, but no less than $215,000, plus interest.

69. Defendants' conduct as alleged herein was willful, wanton, malicious, and oppressive, and justifies the awarding of exemplary and punitive damages.

13

COMPLAINT FOR DAMAGES

## FIFTH CAUSE OF ACTION
## DECLARATORY JUDGMENT OF RIGHTS AND OBLIGATIONS
### (Against All Defendants)

70. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

71. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and obligations under the Agreements.

72. Plaintiffs contend that:

   a. The Agreements created a joint venture partnership between the parties;

   b. Plaintiffs are entitled to a return of their investments totaling at least $215,000;

   c. Defendants breached the Agreements and have no right to retain Plaintiffs' funds; and

   d. Defendants' purported unilateral changes to the terms of the Agreements are invalid and unenforceable.

73. Plaintiffs are informed and believe, and thereon allege, that Defendants dispute these contentions.

74. Plaintiffs desire a judicial determination of their rights and obligations, and a declaration as to:

   a. The existence and terms of the joint venture partnership;

   b. Plaintiffs' right to a return of their investments;

   c. The invalidity of Defendants' purported unilateral changes to the terms of the Agreements; and

   d. Such other declarations as may be necessary to determine the parties' respective rights and obligations.

75. A judicial declaration is necessary and appropriate at this time so that Plaintiffs may ascertain their rights and obligations under the Agreements.

//

14

COMPLAINT FOR DAMAGES

**SIXTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

76. Plaintiffs allege a claim for restitution under the equitable doctrine of unjust enrichment. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

77. Defendants received a benefit in the form of at least $215,000 from Plaintiffs.

78. Defendants appreciated and had knowledge of this benefit.

79. Defendants accepted and retained this benefit under circumstances that make it inequitable for Defendants to retain it without paying its value to Plaintiffs.

80. As a result of Defendants' unjust enrichment, Plaintiffs have suffered damages in an amount to be proven at trial, but no less than $215,000, plus interest.

**SEVENTH CAUSE OF ACTION**
**FRAUD IN THE INDUCEMENT**
**(Against All Defendants)**

81. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

82. Defendants made numerous false representations to Plaintiffs regarding their business experience, assets, capabilities, and intentions, as set forth above.

83. These representations were material to Plaintiffs' decision to enter into the Agreements and invest money with Defendants.

84. Defendants knew that these representations were false when made, or made them recklessly and without regard for their truth.

85. Defendants intended that Plaintiffs rely on these representations.

15

COMPLAINT FOR DAMAGES

86. Plaintiffs reasonably relied on Defendants' representations and, as a result, entered into the Agreements and invested at least $215,000 with Defendants.

87. As a direct and proximate result of Defendants' fraud in the inducement, Plaintiffs have suffered damages in an amount to be proven at trial, but no less than $215,000, plus interest.

88. Defendants' conduct as alleged herein was willful, wanton, malicious, and oppressive, and justifies the awarding of exemplary and punitive damages.

**EIGHTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(Against All Defendants)**

89. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

90. As partners in the joint venture, Defendants owed fiduciary duties to Plaintiffs, including duties of loyalty, care, and good faith.

91. Under California law, partners in a joint venture are treated the same as general partners in a partnership and owe fiduciary duties to their partners.

92. Defendants breached their fiduciary duties by, among other things:

a. Using Plaintiffs' funds for purposes other than those agreed upon;

b. Taking funds from the joint venture for personal use;

c. Failing to provide Plaintiffs with information regarding the joint venture;

d. Making decisions regarding the joint venture without Plaintiffs' knowledge or consent; and

e. Refusing to return Plaintiffs' funds despite demands to do so.

93. As a direct and proximate result of Defendants' breaches of fiduciary duty, Plaintiffs have suffered damages in an amount to be proven at trial, but no less than $215,000, plus interest.

COMPLAINT FOR DAMAGES

94. Defendants' conduct as alleged herein was willful, wanton, malicious, and oppressive, and justifies the awarding of exemplary and punitive damages.

### NINTH CAUSE OF ACTION
### ACCOUNTING
### (Against All Defendants)

95. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

96. As set forth above, Plaintiffs and Defendants entered into a joint venture partnership.

97. Plaintiffs invested at least $215,000 in the joint venture.

98. Defendants exercised exclusive control over the accounts, communications with third parties, and all disbursements of joint venture funds. Plaintiffs were provided no access to financial records or third-party vendors, and had no practical ability to verify Defendants' representations.

99. Despite Plaintiffs' requests, Defendants have failed and refused to provide an accounting of the joint venture's funds and operations.

100. The amount of money due from Defendants to Plaintiffs cannot be ascertained without an accounting.

101. Plaintiffs have no adequate remedy at law.

### TENTH CAUSE OF ACTION
### CIVIL CONSPIRACY
### (Against All Defendants)

102. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

17

COMPLAINT FOR DAMAGES

103. Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to commit the underlying tortious acts alleged herein—including fraud, conversion, and breach of fiduciary duty—and did so with the intent to defraud and harm Plaintiffs.

104. In furtherance of their conspiracy, Defendants committed the overt acts alleged herein, including but not limited to:

a. Making false representations about their business experience and capabilities;

b. Inducing Plaintiffs to invest substantial sums of money;

c. Using Plaintiffs' funds for purposes other than those agreed upon;

d. Taking funds from the joint venture for personal use; and

e. Refusing to return Plaintiffs' funds despite demands to do so.

105. As a direct and proximate result of Defendants' wrongful conduct and conspiracy, Plaintiffs have suffered damages in an amount to be proven at trial, but no less than $215,000, plus interest.

106. Defendants' conduct as alleged herein was willful, wanton, malicious, and oppressive, and justifies the awarding of exemplary and punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For compensatory damages in an amount to be proven at trial, but no less than $215,000;

2. For punitive and exemplary damages in an amount to be determined at trial;

3. For prejudgment interest at the maximum legal rate;

4. For a judicial declaration of the parties' respective rights and obligations under the Agreements;

5. For rescission of the Original Agreement and Amendment due to fraud in the inducement and material misrepresentations;

6. For an accounting of the joint venture's funds and operations;

18

COMPLAINT FOR DAMAGES

7. For attorneys' fees and costs of suit incurred herein;

8. For restitution and/or disgorgement of unjustly obtained funds, if appropriate;

9. For a prejudgment writ of attachment in accordance with California Code of Civil Procedure § 484.010 et seq., to secure recovery of invested funds; and

10. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: August 05, 2025          *s/ Harrison P. Kordestani*

_____

Harrison Kordestani, Bar No. 175220
hpk@kordestanilaw.com
KORDESTANI LEGAL PARTNERS, INC.
2699 ½ North Beachwood Drive, STE 157
Los Angeles, California 90068
Telephone: (323) 603-7656
*Attorney for Plaintiffs Knights Resources LLC, Dustin Briggs, and Jorge Ignacio Dodero*

19

COMPLAINT FOR DAMAGES

## VERIFICATION

I, Dustin Briggs, am a Defendant as well as an authorized representative for Knights Resources LLC in the complaint against Mr. Michael Cuillard and Ms. Krishna Cuillard.

I have read the forgoing *Complaint for Damages*, and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as top those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in Las Vegas Nevada.

Signature: _____

Date:      August 04, 2025      _____

## VERIFICATION

I, <u>Jorge Ignacio Dodero</u>, am a Defendant as well as an authorized representative for Knights Resources LLC in the complaint against Mr. Michael Cuillard and Ms. Krishna Cuillard.

I have read the forgoing *Complaint for Damages*, and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as top those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in Buenos Aires, Argentina.

Signature: _____

Date: ___August 04, 2025_____